UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

AVAINE STRONG                                  NO: 3:13-CV-00808-DEW-KLH

VERSUS                                         JUDGE DONALD E. WALTER

GRAMBLING STATE UNIVERSITY,                    MAGISTRATE JUDGE KAREN HAYES
ET AL

## MEMORANDUM RULING

Before the court are two motions filed by the defendants: (1) the "Motion for Summary Judgment Regarding Claims against GSU Employee Defendants," [Doc. 78];[1] and (2) the "Motion for Summary Judgment Regarding Claims against Grambling State University, Board of Supervisors for the University of Louisiana System, and Board Members,"[Doc. #79].[2] Plaintiff Avaine Strong ("Strong") opposes the motions. [Docs. ##83, 84, 92]. Because the motions are nearly identical and address substantially the same issues, the court will address them simultaneously.[3] For the following reasons, both motions are **GRANTED**.

---

[1] Document 78 pertains to the following defendants: Raymond Abraham; Monica Bradley; Danny E. Hubbard; Frank G. Pogue, Connie R. Walton; and Evelyn Wynn.

[2] Document 79 pertains to the following defendants: filed on behalf of the following defendants: Grambling State University; the University of Louisiana System Board of Supervisors; Paul Aucoin; Russell Mosely; Wayne Parker; Edward J. Crawford, III; Andre Coudrain; John O. LeTard; Renee Lapeyrolerie; Louis J Lambert; E. Gerald Hebert, David Guidry; Jimmy R. Faircloth, Jr.; William Dearmon; Winfred Sibille; Carl Shetler; Jimmie Martin, Jr.; and Jimmy Long, Sr.

[3] The court reminds defendants' counsel that the same party filing more than one summary judgment motion on identical or substantially similar points of law results in unnecessary confusion for the court and undue strain on judicial resources. Counsel are strongly cautioned against circumventing local rules by filing separate motions. *See, e.g.*, L.R. 7.8 (imposing page limits on briefs). The court notes that this litigation has become needlessly cumbersome due to both parties' duplicative and deficient filings. Needless delays could result in sanctions. *See* FED. R. CIV. P. 11(c) & 12(f).

## I. BACKGROUND

Strong, an African-American male, is a professor of Mathematics and Physics at Grambling State University ("Grambling"). He began his career at Grambling as a visiting professor in January 2001, and was thereafter hired as an assistant professor in the Department of Mathematics and Computer Science. [Doc. #84, p. 1]. In 2006, he was named the head of the Department of Physics. *Id.* He attained tenure in 2007. *Id.*

In 2011, Strong was named the interim head of the newly-merged department of Mathematics and Physics. *Id.* Strong did not receive a raise, nor did he receive extra-services pay. *Id.* The administration cited budgetary constraints and the fact that Strong was already a department head as justifications for his salary remaining unchanged. *Id.* Strong filed an administrative grievance in an effort to raise his pay, but was unsuccessful. *Id.* In a separate grievance, Strong successfully secured the payment of a previously unpaid $5,000.00 cash prize in connection with an "Excellence in Teaching" award that Strong had won. *Id.*

Strong stepped down as interim department head in August 2012 in protest over the amount of his compensation relative to his workload. *Id.* at 1–2. Thereafter, he continued to work full-time as a tenured professor at Grambling, and he is still working in that capacity today. [Doc. #78-1, p. 1 at ¶ 1; Doc. #84-1, p. 1, at ¶ 1].

On December 13, 2012, Strong filed a discrimination complaint against Grambling with the Equal Employment Opportunity Commission ("EEOC"). [Doc. #78-7, p. 111]. Therein, he claimed that he was discriminated against during his term as interim department head. Strong alleged that an unnamed Grambling professor was offered to head the department permanently at a higher salary than that which Strong received. According to Strong, the alleged offer disproved the

administration's justifications for Strong's lower salary. *Id.* Strong further claimed that two female professors were offered higher salaries as "coordinator of english" than the salary Strong received as interim department head. *Id.* Strong asserted that the foregoing actions were based on his status as a black male and were also taken in retaliation for his grievances. *Id.* Finding no evidence of discrimination, the EEOC denied Strong's claim, and issued a notice of rights letter on February 7, 2013. [Doc. #1, p.7]. The instant suit was timely filed on April 30, 2013. [Doc. #1].

Strong's complaint, as amended, makes numerous vague assertions against a litany of defendants. [Doc. #23]. Generally, Strong claims to have been grossly mistreated by the Grambling administration, whose actions were then ratified by the University of Louisiana System Board of Supervisors ("the UL System Board"). Strong argues that the mistreatment amounted to a violation of his constitutional rights. Strong references "unlawful discriminatory practices (including sexual), negligence, gross negligence, harassment (hostile environment), illegal hiring and promotion practices, payroll fraud, violation of equal pay, retaliation, violation of due process, deprivation of honest services, and conspiracy."[Doc. #23, p. 2]. He specifically claims that the defendants' collective actions violated 42 U.S.C. §§ 1981, 1983, 1985, 1986, & 1988; Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et. seq.*); the Equal Pay Act (29 U.S.C. § 206(d)(1)); and 18 U.S.C. § 1346. *Id.*

Strong particularly focuses on the actions of defendant Connie Walton ("Walton"), who is the Dean of Grambling's College of Arts & Sciences and Vice President/Provost of Academic Affairs. *Id.* at 6–7. Walton supervised several departments, including Strong's, during the time period in question. In the instant suit, Strong claims that Walton specifically discriminated because he is a *heterosexual* black male. *Id.* at 7. In other words, Strong alleges that Walton, in conjunction

with all other named defendants, provides preferential treatment to women and homosexuals. *Id.* He further complains that Walton's retaliatory actions and statements show that she "has a propensity and a history of vindictiveness." *Id.*

In total, plaintiff seeks nearly $8 million in compensatory damages, punitive damages, attorneys' fees, interest, and costs. *Id.* at 15. He also demands that "positions be revisited, vetted, and filled according to fairness, competency, qualifications, and that salaries be awarded based on qualifications and experiences." *Id.* Finally, he requests that defendants "restore Plaintiff's respect, good name, and reputation throughout and within the Grambling community." *Id.*

Defendants now move for summary judgment, claiming immunity and a complete lack of evidence supporting any of Strong's claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (citing *United States Steel Corp. v. Darby*, 516 F.2d 961 (5th Cir. 1975)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v.*

*Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." LR 56.2.

### III. DISCUSSION

After due consideration, the court finds that summary judgment is warranted. As discussed below, Strong's claims are wholly unsupported and meritless.

### A. Claims against Grambling, the UL System Board, and the Individual Defendants in their Official Capacities

Strong has sued Grambling State University, the UL System Board, the individual board members acting in their official capacities, and several Grambling employees in their official capacities. [Doc. #23, p. 13]. As a preliminary matter, the court must determine whether and to what extent these defendants are subject to suit in federal court.

#### 1. Sovereign Immunity

Generally, the Eleventh Amendment bars all persons from suing a state for money damages in federal court. *See* U.S. CONST. AMEND. XI; *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). The bar also extends to state agencies or departments, because such suits are, in actuality, suits against the state. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 146 (5th Cir. 1997). Additionally, state officials are immune under the Eleventh Amendment when they are sued in their official capacities for retrospective monetary relief.[4] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).

Sovereign immunity is not absolute; it may be either: (1) specifically abrogated by Congress; or (2) explicitly waived by the states. *Seminole Tribe*, 517 U.S. at 54. "Claims under federal statutes do not override the Eleventh Amendment bar unless there is a clear showing of congressional intent

---

[4] With respect to official capacity suits, the Supreme Court carved out an exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908), which held that a plaintiff is not barred from bringing a suit for prospective relief against a state employee acting in his official capacity. *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008) (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008). Under *Ex Parte Young*, a federal court can order injunctive relief which requires the state official sued in his official capacity to conform his future conduct to the commands of federal law; *Ex Parte Young* does not permit a federal court to grant prospective injunctive relief requiring the state official to conform his future conduct to state law. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104–05 (1984).

Strong's suit demands prospective relief, insofar as he requests that the court order that "positions be revisited, vetted, and filled according to fairness, competency, qualifications, and that salaries be awarded based on qualifications and experiences." [Doc/ #23, p. 5]. Accordingly, plaintiff is not barred from asserting his claims against the state officials, albeit for the limited purposes authorized under *Ex Parte Young*.

to abrogate the bar." *Voisin Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185–86 (5th Cir. 1986) (citation omitted). "[A] state waives Eleventh Amendment immunity 'either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a 'clear declaration' that it intends to submit itself to federal court jurisdiction.'" *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 393 (5th Cir. 2007) (quoting *Meyers ex rel Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005)). The State of Louisiana has explicitly declined to waive its sovereign immunity. La. R.S. § 13:5106(A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.").

Based on controlling precedent, the court finds that Grambling and the UL System Board are arms of the state and are thus entitled to sovereign immunity. *See, e.g., Raj v. La. State Univ.*, 714 F.3d 322, 328–29 (5th Cir. 2013) (finding that the board of Louisiana State University is an arm of the state); *Richard v. Southern Univ.*, 118 F.3d 450 (5th Cir. 1997) (finding that Southern University, a public institution under the control of the UL System Board, is an arm of the state); *see also* La. R.S. § 17:3217(1) (listing Grambling as an institution under the control of the UL System Board of Supervisors). Indeed, Strong concedes this point. [Doc. #83, pp. 2–3]. Accordingly, Grambling, the UL System Board, and the individual defendants in this suit are immune, unless the federal statutes upon which Strong bases his claims expressly abrogate sovereign immunity.[5] As previously stated, Strong advances claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e, *et. seq.*); the Equal Pay Act (29 U.S.C. § 206(1)); and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. [Doc.

---

[5] Strong also appears to argue that defendants' active litigation of this case amounted to a "litigation-conduct" waiver of sovereign immunity. [Doc. #83, pp. 2–3]. This argument fails. A State voluntarily invokes federal court jurisdiction by filing a claim or otherwise submitting a dispute for adjudication in federal court. *Fairley v. Stalder*, 294 Fed. App'x 805, 809 n. 16 (5th Cir. 2008) (citing *Lapides v. Bd. of Regents of the Univ. Sys. Of Ga.*, 535 U.S. 613, 619 (2002). There is no voluntary invocation of federal jurisdiction in this suit, insofar as all of the state entities and employees appear solely as involuntary defendants.

#23, p. 2 ]. Congress has abrogated sovereign immunity for suits against public employers brought under Title VII and the Equal Pay Act. *Ussery v. State of La. On Behalf of La. Dep't Of Health and Hosp.*, 150 F.3d 431, 434–37 (5th Cir. 1998). However, sovereign immunity bars the remainder of Strong's claims for retrospective monetary relief against the state entities and officials.[6] Therefore, Strong's claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988 against the state entities and officials are dismissed.

### 2. Title VII

Strong claims under Title VII include discrimination, harassment, and retaliation.[7] In the interest of clarity, each claim will be discussed separately.

#### a. Discrimination

Title VII prohibits state employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447–48 (1976). The plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Where, as here,

---

[6] *See, e.g., Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981) (holding that 42 U.S.C. § 1981 does not abrogate sovereign immunity); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 2002) ("Section 1983 does not abrogate Eleventh Amendment Immunity....") (citation omitted); *Early v. Southern Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, 252 F. App'x 698, 700–01 (5th Cir. 2007) (holding that 42 U.S.C. §§ 1985 and 1986 do not abrogate sovereign immunity). *See also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 279–80 (1989) (clarifying that a the abrogation of sovereign immunity under 42 U.S.C. § 1988 only applies to attorney's fees awarded in connection with successful claims for prospective relief).

[7] Defendants, citing *Fine v. GAP Chem. Corp.*, 995 F.2d 576 (5th Cir. 1993), argue that the court should disregard any allegation or arguments not explicitly made in Strong's EEOC complaint. [Doc. # 79-4, pp. 12–13]. Defendants ignore the fact that the *Fine* court specifically found that rigid construction of the EEOC complaint is not mandatory, and that the scope of a Title VII complaint may "extend as far as, but no further than, the scope of the EEOC investigation *which could reasonably grow out of the administrative charge.*" *Fine*, 995 F.2d at 578 (emphasis added) (quoting *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. Unit B May 1981). This flexibility protects *pro se* litigants who often file EEOC complaints without assistance of counsel. *Id.* This court finds that Strong's claims in the instant suit regarding discrimination based on his sexual orientation and harassment—though not found on the face of the EEOC complaint—are nonetheless so factually related to the EEOC charge that analysis of these issues should not be precluded.

a claim of discrimination is based on circumstantial evidence, a prima facie case is made if the plaintiff demonstrates that he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam) (citation omitted). "If the plaintiff makes a prima facie showing, the burden shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. . . . [T]he plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.* (citations omitted).

Although it is difficult to discern the basis on which Strong is claiming discrimination—his race, gender, status as heterosexual—the court has no difficulty in concluding that Strong has failed to make out a prima facie case. There is nothing in the record suggesting that Strong was discriminated against because of his race at any time, and Strong admitted in his deposition that he is not claiming racial discrimination. [Doc. #92, p. 139]. As for Strong's claim that he was discriminated against because he is a heterosexual male, he offers as evidence several "personnel action forms," which he claims establish that women and homosexuals earn higher salaries than he does and receive pay increases where he does not. [Doc. #92-3, pp. 1–5]. These documents do nothing to establish that Strong was denied a position for which he was qualified or otherwise suffered an adverse employment action solely on the basis of his gender or status as a heterosexual. As such, plaintiff has failed to establish a prima facie case of discrimination.

Even assuming *arguendo* that plaintiff were able to make a prima facie showing,

Grambling's explanation of the difference in pay is compelling. As reflected in Grambling's Faculty Handbook, faculty compensation is driven by a host of variables including qualifications, experience, course load, market factors, and program needs. [Doc. #79-7, pp. 40–44]. Furthermore, Grambling has absorbed severe budget reductions since 2010, necessitating such drastic measures as decreasing overtime pay and reorganizing of department heads without raises. *Id.* at 98–110. The proffered explanations for the amount of Strong's pay, and for the differences in pay amongst the faculty, are legitimate and nondiscriminatory. Thus, the court finds that, to the extent necessary, defendants have met the second part of the burden-shifting framework applied to Title VII claims. *See McCoy*, 492 F.3d at 556.

Based upon the limited evidence and conclusory assertions provided, Strong cannot demonstrate that Grambling's explanation of the faculty awards program was a pretext for discriminating against males or heterosexuals. Accordingly, the court finds that summary judgment is warranted as to Strong's discrimination claims.

### b. Retaliation

Strong claims that he was retaliated against in violation of Title VII for his grievances over nonpayment of the teacher award and the amount of his salary, as well as making a public television appearance protesting the actions of the university. [Doc. #83, p. 6]. He claims that he and several other department heads were reduced from 12-month to 10-month employees as a result of these protected actions.

In order to succeed on a retaliation claim under Title VII, the plaintiff must establish: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and

the adverse employment action. *Mattern v. Eastman Kodak*, 104 F.3d 702, 705 (5th Cir. 1997). The ultimate question is whether the defendant discriminated against that plaintiff because the plaintiff engaged in conduct protected by Title VII. *Long v. Eastfield College*, 88 F.3d 300, 304 n. 4 (5th Cir. 1996).

Defendants do not dispute that Strong engaged in protected activity by filing his grievances. However, defendants argue that being restructured to a 10-month employee was not an "adverse employment action" because he actually earned *more* than he would have as a 12-month employee with the addition of a summer school class. [Doc. #79-4, p. 16]. Finally, defendants argue that Strong cannot show that there was a causal relationship between the grievance and the restructuring of his contract.

Assuming, without deciding, that Strong suffered an adverse employment action, the court finds that Strong cannot show a causal connection. Strong admits that the 2010 reduction affected multiple department heads and not just himself. [Doc. # 92, pp. 88–89]. Additionally, the court is satisfied that the departmental realignment occurred as part of Grambling's 2010–2011 budget reduction plan and was in no way connected to Strong's conduct. [Doc. #79-7, pp. 98–110]. Accordingly, summary judgment is warranted on Strong's retaliation claims.

### c. Harassment (Hostile Work Environment)

Strong's final claim under Title VII is that "[d]efendants created a hostile environment, by way of displaying mean spiritedness, disrespectful [sic], unprofessionalism, rudeness and non-courtesy." [Doc. # 23, p. 14]. This claim is plainly meritless.

To establish a claim for harassment under Title VII, Strong must establish: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment

complained of was based on his status as a member of the protected group; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted). The harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citation omitted). The work environment must be deemed "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2009) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (internal brackets omitted). In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, courts must look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Strong has provided scant evidence of harassment and it is unclear what sort of harassment he is claiming, who committed it, or for how long. During Strong's deposition, the following exchange occurred between defense counsel and Strong, which provides some degree of guidance:

> Q: And you refer also to harassment. Tell me what you meant by harassment.
>
> A: Well, the harassment is when I'm receiving all these little notes from Walton complaining about me not doing this or not doing that, not setting up a schedule right or not letting a student take—make up work or missing meetings and whereby, you know, I'm in a class. I can't be at the meeting if I'm teaching a class. It was just all harassment.
>
> Q: So that's what you mean by harassment?

A: (Witness nods head.)

Q: Is that a yes?

A: Yes. Yes.

[Doc. #92, p. 149]. Strong attaches two of the "little notes" in his opposition brief. In the first note, dated October 9, 2002, Walton expresses concern with Strong's testing procedures. [Doc. # 92-3, pp.10-11]. In the other note, dated December 5, 2002, Dr. Walton asks Strong why he is not letting a student make up a test. *Id.* at 6.

The court finds that Strong's harassment claim is patently without merit.[8] Walton's notes were not offensive, hostile, or abusive, nor were they physically threatening or humiliating. Furthermore, the two notes were sent in late 2002, nearly ten years before Strong filed his EEOC complaint, and thus it cannot be said that there was any pervasive harassment. Furthermore, there is no indication that Walton's conduct—or any other defendants' conduct, for that matter—was based on Strong's status as a member of any protected class. The remainder of Strong's harassment allegations are scattershot, vague, and wholly unsupported by any evidence. Accordingly, the court finds that summary judgment is warranted on Strong's harassment claims.

### 3. Equal Pay Act

Strong claims that defendants' actions violated the Equal Pay Act, 29 U.S.C. § 206(1) ("EPA"). "To state a prima facie case for wage discrimination under the EPA, a plaintiff must show that the employer pays different wages to men and women, the employees perform 'equal work on jobs the performance of which requires equal skill, effort, and responsibility,' and the employees perform their jobs 'under similar working conditions.'" *Thibodaux-Woody v. Houston Comm. Coll.*,

---

[8] Because this claim can be so easily disposed of, the court does not reach defendants' prescription defense.

593 F. App'x 280, 283 (5th Cir. 2014) (citing 29 U.S.C. § 206(d)(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). "Once the employee has carried her burden to show unequal wages, 'the burden shifts to the employer to show that the differential is justified under one of the [EPA's] four exceptions.'" *Thibodaux-Woody*, 593 Fed. App'x at 283 (quoting *Corning Glass Works*, 417 U.S. at 196). An employer is not liable under the EPA if it shows that the pay disparity between men and women is based on: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. 29 U.S.C. § 209(d)(1); *see also Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001) (quoting *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000)). If the defendant establishes any of the above grounds, the plaintiff must then show that the proffered explanation is simply a pretext paying workers of one sex less than the other. *Phillips v. TXU Corp.*, 195 Fed. App'x 221, 224 (5th Cir. 2006).

Strong alleges that Beatrice McKinsey, a female faculty member, was given extra-services pay when she was named coordinator of the Department of English and Foreign Languages in 2011, but that he was not granted extra-services pay when he was appointed as interim head of the merged Department of Mathematics and Physics the same year. [Doc. #83, p. 5]. Defendants provide evidence that Strong in fact earned a higher total salary than McKinsey in 2011. [Doc. #79-4, p. 20]. Additionally, the evidence shows that Strong already received a raise in 2006 when he was promoted to head the Department of Physics; therefore, defendants argue that the merger with the Mathematics Department in 2011 did not entitle Strong to an additional raise. *Id.* Strong puts forward no evidence to rebut that of the defendants.

The court finds that plaintiff has failed to make out a prima facie case that female employees

are paid higher than men for positions of equal skill, effort, and responsibility. Strong had already received a raise in 2006 when he became a department head, and McKinsey received an extra-services stipend is because she was being promoted, not due to her status as female. Furthermore, plaintiff offers no other competent evidence that male faculty members are systematically paid less than females at Grambling. Accordingly, Strong's EPA claims are meritless and summary judgment is warranted.

### B. Claims Against State Officials in their Individual Capacities

Strong has sued each member of the UL System Board in their individual capacities, along with several members of the Grambling administration. As explained below, because these defendants are state officials, they are entitled to qualified immunity

#### 1. Qualified Immunity

The Eleventh Amendment does not bar suits against officers in their individual capacities. *See Hudson v. City of New Orleans*, 174 F.3d 677, 687 n.7 (5th Cir.1999). Nevertheless, "[q]ualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

In order to overcome the defense of qualified immunity, the plaintiff must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011)); *cert. denied*, 133 S.Ct. 840 (2013). A constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Khan*, 683 F.3d at 194 (citation omitted). Courts have discretion to address the objective reasonableness inquiry first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The defense of qualified immunity, "even on summary judgment, 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Poole*, 691 F.3d at 627 (quoting *Brumfield*, 551 F.3d at 326). In addition, the defense alters the summary judgment burden of proof by requiring the plaintiff to evidence a genuine issue of material fact. *See Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).

With the above qualified-immunity standard in mind, the court readily concludes that Strong has failed to evince issues for trial as to the state officials. There is nothing in the record suggesting that any defendant, either individually or in concert with another, acted in an objectively unreasonable manner at any time. Furthermore, as explained below, Strong fails to demonstrate that any of the individual defendants violated Strong's statutory or constitutional rights.

### 2. Claims Under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988

Regarding the claim under 42 U.S.C. § 1981, Strong has made clear that he is not claiming that he was denied any rights based on his race. [Doc. #92, p. 139]. As such, the statute is inapplicable to the facts of this case. *See, e.g., Bobo v. ITT, Continental Baking Co.*, 662 F.2d 340, 342–45 (5th Cir. 1981).

Under 42 U.S.C. § 1983, Strong must demonstrate that: (1) he was deprived of a right, privilege, or immunity secured by the constitution and laws of the United States; and (2) that the

violation was committed by a person acting under color of state law. Strong has made no such showing, nor could he at trial. Strong voluntarily stepped down as department head in 2012 and remains a tenured professor at Grambling. His grievance regarding the $5,000 cash prize was successful, and he was eventually paid the full amount of the award. The restructuring of Strong's contract and salary was the result of a university-wide budget reduction plan. Strong cannot show that any actions were directed at him individually in retaliation for constitutionally protected activity, nor can he show that the administration favors women or homosexuals. Strong's dissatisfaction with the Grambling administration and the university's budgetary situation does not rise to the level of a constitutional claim.

Strong's bare suggestion that he was denied procedural due process when his salary was reduced without a hearing is likewise meritless. State universities enjoy a large degree of discretion in setting their employees' salaries, including the salaries of tenured professors. *Williams v. Tex. Tech. Univ. Health Sci. Ctr.*, 6 F.3d 290, 292–93 (5th Cir. 1993). The Fifth Circuit has made clear that a hearing is not automatically required before any reduction of a tenured professor's salary. *Id.* Rather, the minimum process required is "notice of the reasons for a proposed deprivation and some opportunity to respond to the substance of the allegations before a final deprivation occurs." *Id.* Here, Strong was given notice of the salary reduction and had an opportunity to file an administrative grievance, which he in fact did. [Doc. #84, p. 1]. No further process was required under these facts.

Strong also claims that all defendants are liable under 42 U.S.C. §§ 1985 and 1986 for conspiracy to deprive him of civil rights. This claim is purely conclusory. Strong simply names all of the persons up the chain of command; he fails to identify an overt act of two or more persons in an effort to deprive Strong or anyone else of their civil rights, and he fails to demonstrate that any

defendant knew of an ongoing civil rights conspiracy and failed to prevent it. *See* 42 U.S.C. §§ 1985(3); 1986. Accordingly, his claims under these statutes fail.

In sum, the court is convinced that there are no genuine issues of fact for trial as to Strong's claims against the individual state officials. As such, his claim for attorney's fees under 42 U.S.C. § 1988 fails as well.

### *3. Claims under Criminal Statutes and State Law*

The remainder of Strong's claims merit only brief consideration. Strong advances claims for fraud under 18 U.S.C. § 1346 and payroll fraud under La. R.S. § 14:138. [Doc. #23, pp. 5, 13]. Both of these statutes proscribe criminal conduct and do not explicitly give rise to an independent civil cause of action. Accordingly, these claims do not provide a basis for liability on the part of any defendant. *Cort v. Ash*, 422 U.S. 66, 78–79 (1975).

Strong also makes several claims for violations of Louisiana state law including: negligence, gross negligence, breach of contract, defamation, and slander, but does not elaborate in any way. [Doc. #23, pp. 12–13]. To the extent that the state-law claims are brought against the state officials in their official capacity, such claims are barred by the Eleventh Amendment. *Earles v. State Bd. Of Certified Public Accountants of Louisiana*, 139 F.3d 1033, 1039–40 (5th Cir. 1998). To the extent that such claims are brought against the state officials in their individual capacities, the court may entertain the claims. *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992). However Strong has offered no evidentiary support for any of his state-law claims, nor has he given any indication as to how or why his state-law theories apply to any of the named defendants. As such, the court readily concludes that summary judgment is proper as to these remaining claims.

## IV. CONCLUSION

For the foregoing reasons:

**IT IS ORDERED** that defendants' motions for summary judgment, [Docs. ## 78, 79], be and are hereby **GRANTED,** and that Strong's claims be and are hereby **DISMISSED WITH PREJUDICE**; and

**IT IS FURTHER ORDERED** that any and all other outstanding motions be and are hereby **DENIED AS MOOT.**

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of March, 2015.

*[signature]*

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE